## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | **Chapter 7** |
| **DARRYL PETTY,** | ) | |
| | ) | **Case No.  10-55599** |
| | ) | |
| Debtor, | ) | **Hon.  Jacqueline Cox** |
| **DAVID R. HERZOG,** | ) | |
| **Trustee in Bankruptcy,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Adv. Pro.. No. 11-01358** |
| | ) | |
| **DARRYL PETTY,** | ) | |
| | ) | |
| Defendant. | ) | |

### FINDINGS OF FACTS AND CONCLUSIONS OF LAW

The following Findings of Fact and Conclusions of Law are made and entered:

### FINDINGS OF FACT

1.     Defendant, Darryl Petty, filed his voluntary petition for relief under Chapter 7 of the Bankruptcy Code on December 16, 2010.  The Schedules, Statement of Financial Affairs were signed under penalty of perjury.

2.     David R. Herzog (the "Trustee") was appointed and duly qualified as the Trustee of the Chapter 7 bankruptcy estate of the Defendant.

3.     The Trustee timely filed a Complaint Objecting to Discharge on June 17, 2011 and the Defendant has failed to Appear, Answer or Otherwise Plead to the Complaint and is accordingly in default.

-1-

4.    The Defendant was examined under oath at a Section 341 meeting of creditors on February 15, 2011, March 7, 2011 and June 6, 2011. At the meeting of creditors conducted on February 15, 2011, the Debtor testified that he signed the Declaration of Electronic Filing, (docket # 2) and that he understood that he was filing his bankruptcy Petition, Schedules and Statement of Financial Affairs under penalty of perjury.

5.    At the February 15, 2011 meeting, the Defendant testified that his Petition, Schedules and Statement of Financial Affairs (docket #s 1, 9 and 10) were truthful and accurate and that he had no amendments or changes at the time.

6.    At each of the meeting of creditors, the Defendant testified that he was the 100% owner of a limited liability company called Ultra Dad, LLC; this limited liability was in existence from 2002 until it was involuntarily dissolved by the Illinois Secretary State on July, 9 2010.

7.    Ultra Dad, LLC was neither scheduled by the Defendant in response to Schedule B, Question 13, Schedule of Personal Property or Question 18 of the Statement of Financial Affairs.

8.    Ultra Dad owned real estate located at and commonly known as 4947 S. Calumet Ave., Chicago, Illinois which was improved with an apartment building. Ultra Dad converted the property into an 8 unit condominium building in which it owned seven (7) units and the Defendant owned one (1) unit. On February 26, 2008, the Debtor closed on the sale of unit 3N which he owned individually to Beverly Washington. As a result of this sale, the Defendant received proceeds in the amount of $290,618.24 which were deposited into an Ultra Dad Citibank Bank checking account ending in 8950 on February 28, 2008. Subsequently, on July 20, 2009, Ultra Dad closed on the sale of the last condominium unit, Unit #4S to Lashonda Moore. As a result of this sale, cash

-2-

proceeds in the amount of $135,516.58 were deposited into the aforestated Ultra Dad account at Citibank on July 21, 2009.

9.      At the Section 341 meeting on June 6, 2011, the Defendant testified that he did not own or possess any personal checking or savings accounts and that he used the Ultra Dad Citibank account to pay his personal expenses.  This account was not listed in response to Question 2, Schedule B.

10.     Between the period  February 29, 2008 to December 15, 2009, the Defendant made, in aggregate, over $500,000 in cash withdrawals and wire transfers for the Ultra Dad CitibBank checking account.  At the June 6, 2011 meeting of creditors the Defendant could neither provide an explanation  nor documents which would explain the use of these funds.

11.     Question 1 of the Statement of Financial Affairs asks the Defendant to state gross income from employment or business during the calender year as of the date of the filing and for the 2 calendar years preceding that calendar year.  The Defendant's response to this question was: "None." Question 2 of the Statement of Financial Affairs aks the Defendant to list income other than from employment or business for the two years immediately preceding the commencement of the case.  The Defendant's answer to this question is "None."


## CONCLUSIONS OF LAW

### Jurisdiction

1.      This Court has jurisdiction to hear and determine this Complaint pursuant to Title 28 § 157(b)(2)(J) of the United States Code and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.

-3-

2.    Venue of this proceeding is in the United States District Court for the Northern District of Illinois pursuant to Title 28,§ 1409(a.).

3.    The Trustee has authority to prosecute this Complaint pursuant to Title 11 U.S.C. § 727(c)(1).

### 11 U.S.C. Section 727(a)(2)

4.    Section 727(a)(2) provides that the court shall grant a discharge unless the debtor, with intent to hinder, delay or defraud a creditor has transferred, removed destroyed, mutilated, or concealed property of the estate within one year of the date of the filing of the petition or property of the estate after the date of the filing of the petition.

5.    This section requires proof that the debtor (1) transferred, removed, or concealed property; (2) belonging to the estate; (3) within one year of filing the petition; and (4) with the intent to hinder, delay or defraud a creditor of the estate." *In re Self,* 325 B.R. 224, 237 (Bankr N.D.Ill. 2005).

6.    Accordingly, two components must be met, before a debtor's discharge will be denied.; (1) a transfer or concealment of property and (2) a subjective intent to hinder, delay or defraud creditors. *In re Self,* 325 B.R. 224 at 237.  Moreover, both acts must have been committed within the year prior to filing of the bankruptcy. *In re Self,* 325 B.R. 224 at 237.

7.    "A concealment for purposes of § 727(a)(2) consists of 'failing or refusing to divulge information to which creditors were entitled.' *Holstein,* 299 B.R. at 229 (internal quotation omitted); *see also Scott,* 172 F.3d at 967 (stating that concealment includes preventing discovery or fraudulently transferring or withholding knowledge or information required by law to be made known).

-4-

8.      Defendant Petty concealed the existence of his ownership interest in Ultra Dad LLC by failing to schedule this entity in response to Schedule B, Question 13, Schedule of Personal Property or Question 18 of the Statement of Financial Affairs.

9.      The Defendant concealed his income from his ownership in Ultra Dad LLC by failing to schedule that income in response to Questions 1 and 2 of the Statement of Financial Affairs.

10.     The Defendant concealed his interest in the Ultra Dad checking accounting ending in 8950 at Citibank by failing to schedule that account in response to Question 2, Schedule B.

### 11 U.S.C. Section 727(a)(4)

11.     Section 727(a0(4) provides that the court shall grant a debtor a discharge unless the debtor knowingly and fraudulently, in connection with the case makes a false oath or account.

12.     This section requires proof that the (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with the intent to deceive; and (5) the statement related materially to the bankruptcy case. *Olbur,* 314 B.R. at 745; *Costello,* 299 B.R. at 899; *Urological Group, Ltd. v. Petersen (In re Petersen),* 296 B.R. 766, 790 (Bankr.C.D.Ill.2003); *Fosco,* 289 B.R. at 93; *Bostrom,* 286 B.R. at 359; *Bailey,* 147 B.R. at 162." *In re Self,* 325 B.R. 224 at 245.

13.     A debtor's Petition, Schedules, Statement of Financial Affairs, statements made at a 341 meeting, testimony given at a Federal Rule of Bankruptcy Procedure 2004 examination, and answers to interrogatories all constitute statements under oath for purposes of § 727(a)(4). *In re Self,* 325 B.R. 224 at 245.

14.     The Defendants Schedules and Statement of Financial Affairs contain numerous omission which constitute a false oath or account; to wit:

(a)    Schedule B, Question 2 fails to list the Ultra Dad Citibank Account ending in 8950 which the Defendant used to pay his personal expenses.

(b)    Schedule B, Question 13 fails to schedule the Defendant's ownership of Ultra Dad LLC.

(c)    Question 1 and 2 of the Statement of Financial Income fails to schedule income received by the Debtor from Ultra Dad LLC for the two years immediately preceding the commencement of the case.

(d)    Question 18 of the Statement of Financial Affairs omits the listing of the Defendant's ownership of Ultra Dad within the six years immediately preceding the commencement of the case.

### 11 U.S.C. Section 727(a)(5)

15.    Section 727(a)(5) provides that the court shall grant a debtor a discharge unless the debtor has failed to satisfactorily explain any loss of assets or deficiency of assets to meet the debtor's liabilities.

16.    Under § 727(a)(5), the bankruptcy court has "broad power to decline to grant a discharge ... where the debtor does not adequately explain a shortage, loss, or disappearance of assets." *In re Olbur*, 314 B.R. at 740 (BankrN.D.Ill.2004) (quoting *In re D'Agnese*, 86 F.3d 732, 734 (7th Cir.1966); *In re Martin*, 141 B.R. 986, 992 (Bankr.N.D.Ill.1992).

17.    Defendant deposited proceeds in the amount of $290,628.24 from the sale of Unit 3N at 4947 S. Calumet Ave., Chicago, Illinois in the Ultra Dad LLC Citibank Account on February 28, 2008.  Again on July 21, 2009, the Defendant deposited proceeds in the amount of $135,516.58 from the sale of Unit #4S in the same Citibank account.  At the time of the commencement of the Defendant's bankruptcy case, Schedule B did not disclose the existence of any checking or savings account and only $200 in cash.  Defendant neither provided documents nor an explanation at the

-6-

meeting of creditors as to the use of these monies and therefore has failed to satisfactorily explain the disappearance of $426,144.82 in monies within three years of the commencement of the case.

18.    Defendant between the period February 29, 2008 to December 15, 2009, made in aggregate over $500,000 in cash withdrawals and wire transfers from the Ultra Dad Citibank account. Defendant was unable to provide an explanation or documents as to the use of these monies and therefore has failed to adequately explain the loss or disappearance of these monies.

## CONCLUSION

For the foregoing reasons, the Court will separately grant judgment in favor of the Trustee and sustains the objections to discharge under §§ 727(a)(2), (4) and (5). The Defendant's discharge will therefore be denied by separate Judgment Order.


ENTERED:

Jacqueline P. Cox

J. Cox
_____

Date: 10-5-11
_____